**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SZ DJI TECHNOLOGY CO., LTD., <br><br> *Plaintiff,* <br><br> v. <br><br> ARASHI VISION INC. d/b/a INSTA360; ARASHI TECHNOLOGIE B.V. d/b/a INSTA360; ISTONE INNOVATION LTD. d/b/a INSTA360; and INSTONE TECHNOLOGY (HK) LTD. d/b/a INSTA360, <br><br> *Defendants.* | CASE NO. _____ <br><br><br> PATENT CASE <br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff SZ DJI Technology Co., Ltd. ("DJI" or "Plaintiff") files this Complaint for Patent Infringement against Defendants Arashi Vision Inc. d/b/a Insta360; Arashi Technologie B.V. d/b/a Insta360; Istone Innovation Ltd. d/b/a Insta360; and Instone Technology (HK) Ltd. d/b/a Insta360 (collectively, "Insta360" or "Defendants") for infringement of U.S. Patent Nos. D1,110,390 and D1,072,023 and alleges as follows:

1

**PRELIMINARY STATEMENT**

1.      In 2018, DJI introduced the original Osmo Pocket—the first truly pocketable, integrated handheld gimbal camera.[1] It has continued to innovate on this design, and in 2023 launched the Osmo Pocket 3, featuring an intuitive rotatable touchscreen for precise control.[2]

2.      Insta360's new Luna line of gimbal cameras, including but not limited to the Luna Ultra, supporting accessories, and the Insta360 mobile application (collectively, the "Accused Products") blatantly copy DJI's patented inventions wholesale.[3] From its silhouette to its feature set, the Accused Products mirror what DJI has spent the better part of a decade engineering and patenting for its innovative handheld gimbal camera systems.

3.      The visual similarity between the Accused Products and the DJI Osmo Pocket 3 design is striking. As shown below, the Accused Products share the same general proportions, the same gimbal-on-handle architecture, and the same component arrangement as DJI's Osmo Pocket 3.

---

[1] *See* "DJI announces the Osmo Pocket, 'the world's smallest 3-axis gimbal' that shoots 4K60p video," Digital Photography Review (Nov. 28, 2018) https://www.dpreview.com/news/5924313633/dji-announces-the-osmo-pocket-the-world-s-smallest-three-axis-gimbal-that-shoots-4k60p-video; *see also*" Small Wonder: An Interview with the Osmo Pocket Design Team," ViewPoints DJI Official DJI Blog (Jun. 11, 2020) https://viewpoints.dji.com/blog/small-wonder-an-interview-with-the-osmo-pocket-design-team.

[2] *See* "DJI Releases the Osmo Pocket 3 for Moving Moments with Unparalleled Precision," DJI Media Center, (Oct. 25, 2023) https://www.dji.com/media-center/announcements/dji-releases-the-osmo-pocket-3-for-moving-moments-with-unparalleled-precision-en.

[3] *See* https://www.insta360.com/product/insta360-luna-ultra.

| DJI's U.S. Design Patent No. D1,072,023 | Insta360's Luna Ultra |
|:---:|:---:|
|  | |
| Figure 1: Ex. 5 at Fig. 1 | Figure 2: Luna Ultra[4] |

4.      DJI brings this action to stop Insta360's infringement and to recover damages adequate to compensate DJI for the harm Insta360 has caused and continues to cause. As detailed in the Counts that follow, the Accused Products embody, either literally or under the doctrine of equivalents, one or more claims of each of the Asserted Patents. DJI seeks a judgment of infringement, a permanent injunction, an award of damages no less than a reasonable royalty, profit disgorgement, enhanced damages under 35 U.S.C. § 284 for willful infringement, attorneys' fees under 35 U.S.C. § 285, and such other and further relief as the Court deems just and proper.

**NATURE OF THE ACTION**

5.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*.

---

[4] *See* "Insta360 Luna first-ever unboxing across the whole web!," Xiaohongshu (May 18, 2026) https://www.xiaohongshu.com/explore/6a0ac68800000000702ce33?xsec_token= ABX1osUj2nqvowArm4ZnlPo-YIBce9jt5FNHsGyfUjFnE.

**THE PARTIES**

6.     Plaintiff SZ DJI Technology Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China, having its principal place of business at T2 Lobby, DJI Sky City, No. 53 Xianyuan Road, Xili Community, Xili Street, Nanshan District, Shenzhen, Guangdong, China.

7.     On information and belief, Defendant Arashi Vision Inc. is a corporation organized and existing under the laws of the People's Republic of China, having its principal place of business at 12F, Building T2, Hengyu Qianhai Financial Center, Nanshan District, Shenzhen, Guangdong, P.R. China. Defendant Arashi Vision Inc. is the parent company, designer, and manufacturer of the Insta360 product line, including the Accused Products.[5] Although Arashi Vision Inc. is engaged in business in Texas, it has not designated an agent for service of process in Texas. The Texas Secretary of State, therefore, is an agent for service of process for Arashi Vision Inc. under the Texas Civil Practice and Remedies Code § 17.044(b).

8.     On information and belief, Defendant Arashi Vision Inc. is a contracting entity for sales of the Accused Products through online platforms such as Amazon.com and B&H Photo Video, and also with brick-and-mortar distributors acting as authorized sellers such as Best Buy in the United States.[6] Through these channels, consumers in the United States place orders for the Accused Products through Amazon, B&H Photo Video, and/or Best Buy.[7] On information and belief, Defendant Arashi Vision Inc. also operates, maintains the U.S. facing Insta360 online store,

---

[5] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at p. 1-1-4.

[6] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at pp. 1-1-160, 419.

[7] *See id*.

and sells the Accused Products directly to U.S. customers.[8] On information and belief, Defendant Arashi Vision Inc. is the self-identified "provider of the Platform Services" where "Platform Services" is defined as the Insta360 websites, Official Store, mobile applications, software, and related services pursuant to the Insta360 User Service Agreement that governs use of the Insta360 mobile application.[9]

9.      On information and belief, Defendant Istone Innovation Ltd. is a company organized and existing under the laws of the Hong Kong Special Administrative Region of the People's Republic of China, with its principal place of business in Hong Kong.[10]  On information and belief, Istone Innovation Ltd. is a wholly owned subsidiary of Arashi Vision Inc. and serves as the international distribution, export, and e-commerce sales subsidiary of the Insta360 enterprise.[11] On information and belief, Istone Innovation Ltd.'s primary functions include product export and import, after sales and repair services, and overseas sales platform.[12] On information and belief, Istone Innovation Ltd. is the contracting party with third party retailers to sell Insta360 branded products, such as Best Buy, ASI Corporation, CMS Distribution, EE Hobbies, EVO

---

[8] *See, e.g.*, Ex. 1 (Insta360 Privacy Policy) at 13 (listing Arashi Vision Inc.'s principal place of business as the point of contact).

[9] *See* Ex. 8 (Insta360 User Service Agreement) at ¶ 15 ("Pursuant to California Civil Code Section 1789.3, California residents are entitled to the following specific consumer rights notice: The name, address and email of the provider of the Platform Services is Arashi Vision Inc., 12F, Building T2, Qianhai Financial Center, Nanshan District, Shenzhen, Guangdong Province, China, postal code: 518000, service@insta360.com.").

[10] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at p. 1-1-548 (listing Istone Innovation Ltd.'s address as Room 5, 6th Floor, Block C1, Hang Wai Industrial Centre, No. 6 Kin Tai Street, Tuen Mun, New Territories, Hong Kong).

[11] *See id.*; *see also* https://www.importyeti.com/supplier/istone-innovation (Istone Innovation importation records).

[12] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at pp. 1-1-73, 548.

Gimbal, ARCHISITE, PC Direct, Solectric, and Thakral.[13] Although Istone Innovation Ltd. is engaged in business in Texas, it has not designated an agent for service of process in Texas. The Texas Secretary of State, therefore, is an agent for service of process for Istone Innovation Ltd. under the Texas Civil Practice and Remedies Code § 17.044(b).

10.    On information and belief, Defendant Istone Innovation Ltd. ships the Accused Products from outside the United States through international logistics carriers to Amazon-designated fulfillment warehouses within the United States, from which Amazon stores and delivers the Accused Products to end customers throughout the United States, including within this judicial District.[14]

11.    On information and belief, Defendant Istone Innovation Ltd. is a contracting party to major United States-facing distribution and supply agreements, including agreements with Best Buy and ASI Computer Technologies, Inc., through which the Accused Products are sold and offered for sale to consumers in the United States.[15] The Apple App Store lists Defendant Istone Innovation Ltd. as the developer and/or seller for the Insta360 mobile application (and on information and belief, Defendant Istone Innovation Ltd. is also the developer and/or seller for the Insta360 mobile application on the Google Play store) marketed and offered to consumers in the United States as a companion application for the Accused Products.

---

[13] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at p. 1-1-420 to 422.

[14] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at pp. 1-1-160; https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2026-04-29/688775_20260429_Z01R.pdf (Insta360 2025 Annual Report) at pp. 50, 241.

[15] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at pp. 1-1-420.



Figure 3: Insta360 Apple Store App[16]

12.    On information and belief, Defendant Arashi Technologie B.V. is a company organized and existing under the laws of the Netherlands, having its principal place of business at Bos en Lommerplein 280, 1055 RW Amsterdam, the Netherlands. Arashi Technologie B.V. is a wholly owned subsidiary of Istone Innovation Limited, a Hong Kong entity that is itself a wholly owned subsidiary of Defendant Arashi Vision Inc.[17] On information and belief, Arashi Technologie B.V. serves as an overseas sales platform for the Insta360 product line, including the Accused Products, and participates in the importation, marketing, distribution, and sale of the Accused Products in the United States.[18]

---

[16] *See* Ex. 2 (Apple App Store for the Insta360 App) at 2 (composite image);

[17] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2026-04-29/688775_20260429_Z01R.pdf (Insta360 2025 Annual Report) at p. 236.

[18] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at p. 1-1-551;

13.     On information and belief, Defendant Instone Technology (HK) Ltd. is a company organized and existing under the laws of Hong Kong, having its principal place of business at Room 5, 6/F, Block C1, Hang Wai Industrial Centre, No. 6 Kin Tai Street, Tuen Mun, New Territories, Hong Kong. On information and belief, Instone Technology (HK) Ltd. is a wholly owned subsidiary of Istone Innovation Limited, which is itself a wholly owned subsidiary of Defendant Arashi Vision Inc. On information and belief, Instone Technology (HK) Ltd. serves as an overseas sales platform for the Insta360 product line, including the Accused Products, through which Defendants import, export, market, distribute, and sell the Accused Products in the United States and elsewhere.[19]

14.     On information and belief, Defendants sell Insta360 products, including the Accused Products, to consumers worldwide (including consumers in the United States and in this District) through a unified global sales network that combines online and offline channels and direct and distributor sales, and that spans more than 10,000 retail stores and long-term partnerships with retailers including Best Buy, B&H, Sam's Club, and Costco, and Apple Store retail locations.[20] On information and belief, Defendants' online sales follow two models.

a.     First, under Defendants' online e-commerce platform model, Defendants sell directly to consumers through (i) the Insta360 Official Store (store.insta360.com),

---

https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2026-04-29/688775_20260429_Z01R.pdf (Insta360 2025 Annual Report) at p. 242.

[19] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at pp. 1-1-550 to 551; https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2026-04-29/688775_20260429_Z01R.pdf (Insta360 2025 Annual Report) at p. 242.

[20] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at pp. 1-1-47, 1-1-158 to 159; https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2026-04-29/688775_20260429_Z01R.pdf (Insta360 2025 Annual Report) at p. 24.

through which "the company completes payment settlement and delivery" and "all aspects of the sales process are managed independently by the company," and (ii) third-party online marketplaces such as Amazon.com, on which consumers place orders for Insta360 products that Defendants then ship through international logistics carriers to Amazon-designated warehouses (including warehouses located in the United States) where Amazon provides warehousing and completes delivery to the end customer.[21] By Defendants' own account, the company "entrusts FedEx and other international logistics companies to transport products to Amazon's warehouses located in the United States, Japan, and Europe, and completes customs declaration."[22]

b.      Second, under Defendants' e-commerce platform warehousing model, Defendants ship inventory from abroad to warehouses operated by the e-commerce platform itself (including Amazon's self-operated retail business), and the platform then conducts the sale, delivery, and payment collection.[23]

c.      Under both models, Defendants ship Insta360 products from outside the United States into the United States in anticipation of, and to fulfill, demand from United States consumers.

15.     On information and belief, Defendants' offline sales likewise follow three established models.

---

[21] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at pp. 1-1-159 to 161.

[22] *See id.* at pp. 1-1-166 to 167 (translation from Chinese original).

[23] *See id.* at pp. 1-1-161 to 162 (translation from Chinese original).

a.      First, Defendants sell to large-scale retail chains and specialized sales channels, such as Best Buy and Sam's Club, which resell Insta360 products to end consumers.[24]

b.      Second, Defendants sell to distributors responsible for market development, distribution, and retail sales of Insta360 products in defined territories, which "conduct business development and sales in accordance with the company's channel policies."[25] Defendants' sales to overseas distributors are made primarily on a buy-out basis under "FOB" (free on board) or "DDP" (delivered duty paid) logistics terms.[26] DDP is an international commercial delivery term under which the seller (here, Defendants) bears responsibility for transportation, export and import customs clearance, import duties, and delivery of the goods to the named destination in the buyer's country, and bears the risk of loss until the goods are delivered.[27]

c.      Third, Defendants sell on consignment through CMS Distribution Ltd., the distributor designated by Apple to procure Insta360-brand products for resale through Apple Store retail locations. Defendants' consignment sales are made exclusively on DDP terms, under which "the company assumes all risks associated with freight incurred before delivery and receipt, as well as the risk of damage or loss of goods during transit."[28]

---

[24] *See id.* at pp. 1-1-162, 165.

[25] *See id.* at p. 1-1-163 (translation from Chinese original).

[26] *See id.* at p. 1-1-163.

[27] *See, e.g.*, https://www.ups.com/us/en/supplychain/resources/glossary-term/delivered-duty-paid.

[28] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at p. 1-1-164 (translation from Chinese original).

d.      Accordingly, on information and belief with respect to sales made on DDP terms, Defendants themselves are responsible for importing Insta360 products into the United States, including the Accused Products, and delivering them to customers in the United States. On information and belief, these channel policies are set at the group level by Defendant Arashi Vision Inc. and implemented through its subsidiaries, including at least Defendant Istone Innovation Ltd., which—together with Defendant Arashi Vision Inc.—is the contracting party to Defendants' supply and distribution agreements with United States retailers and distributors, including Best Buy and ASI Computer Technologies, Inc.[29]

16.      On information and belief, Defendants, along with their global affiliates, operate as a single integrated enterprise under unified control, presenting a unified "Insta360" brand identity to consumers in the United States and worldwide.[30] All Insta360-branded products sold in the United States, whether through the Insta360 Official Store, Amazon.com, Best Buy, or any other channel, are uniformly branded under the "Insta360" name and are marketed as products of a single enterprise. Defendants do not distinguish their direct consumer communications, warranty materials, or product identity from those of any global affiliates. As such, consumers in the United States interact with a single brand identity.

---

[29] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at pp. 1-1-163, 1-1-419 to 420; https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2026-04-29/688775_20260429_Z01R.pdf (Insta360 2025 Annual Report) at p. 24.

[30] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at pp. 1-1-14 to 16.

# Insta360 Sales Policy

【V4.2】

Effective date: 【14th Jan, 2026】

Thank you for choosing the products of insta360.com.

**Parties to the Agreement**

The Insta360 Store Sales Agreement ("this Agreement"or "Sales Agreement") is an agreement concluded between the buyers as the purchaser ("You") and products from the Insta360 Store ( store.insta360.com,"Insta360 Store") of Arashi Vision Inc. and its global affiliated companies (collectively, "Insta360") to purchase products. Please read and fully understand this Agreement, which constitutes a legal document binding on both parties.

Figure 4: Insta360 Sales Policy[31]

17.    On information and belief, Defendant Arashi Vision Inc. exercises complete control over the formation, capitalization, governance, and operations of its global affiliates. Defendant Arashi Vision Inc. established Defendants Istone Innovation Ltd., Arashi Technologie B.V., Instone Technology (HK) Ltd., and its other global affiliates as a wholly owned subsidiary and directly controls all of its board-level and senior management decisions. The same individuals who serve as directors and senior officers of Defendant Arashi Vision Inc. concurrently serve in governance capacities at Defendants Istone Innovation Ltd., Arashi Technologie B.V., Instone Technology (HK) Ltd., and its other global affiliates.[32]

18.    On information and belief, Defendant Arashi Vision Inc. exercises direct operational control over the activities of Defendant Istone Innovation Ltd., Arashi Technologie

---

[31] *See* Ex. 3 (Insta360 Sales Policy) at 1.

[32] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at pp. 1-1-118, 125 (listing Liang Liu as a member and general manager of all four Defendants).

B.V., Instone Technology (HK) Ltd., and other global affiliates through consolidated internal governance mechanisms, including unified management meetings, internal control policies, and approval authority that flows from the parent's board downward through its subsidiary structure.[33] According to Defendants' corporate filings, Defendant Arashi Vision Inc. operates a real-time monitoring system over the operational activities of the entire enterprise group, and that all major decisions (including the formation, capitalization, and ongoing governance of subsidiaries) require Defendant Arashi Vision Inc.'s board or chairman approval.

19.     On information and belief, the operational policies, channel management rules, and reseller terms applicable to the Accused Products are set by Defendant Arashi Vision Inc. as a group-wide matter, with Defendants Istone Innovation Ltd., Arashi Technologie B.V., Instone Technology (HK) Ltd., and other global affiliates implementing those policies without independent authority to deviate.

**JURISDICTION AND VENUE**

20.     This Court has original subject matter jurisdiction over the patent infringement claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

21.     This Court has personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Long-Arm Statute of the State of Texas. On information and belief, each Defendant has purposefully availed itself of the privilege of conducting and soliciting business within Texas and within this District, including by engaging in and supporting infringing activities in Texas and within this District, such that it would be reasonable for this Court to exercise jurisdiction consistent with principles

---

[33] *See* https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-06-06/688775_20250606_KGJB.pdf (Insta360 IPO Prospectus) at pp. 1-1-56, 163, 407.

underlying the United States Constitution and such that the exercise of jurisdiction by this Court would not offend traditional notions of fair play and substantial justice.

22.    On information and belief, Defendants, directly or through their partners, intermediaries, distributors, and/or authorized retailers, purposefully and voluntarily place the Accused Products into the stream of commerce of the United States, with the intention and expectation that those products will be purchased and used by consumers in Texas and in this District.

23.    On information and belief, Defendants market the Accused Products to United States consumers, including consumers in this District, through their United States-facing website (insta360.com), their United States-facing social-media channels, the Insta360 mobile application (distributed through the United States versions of the Apple App Store and Google Play Store and listing Defendants as the developer, seller, or invoicing/contracting party), and direct-to-consumer e-commerce channels accessible to consumers throughout this District.

24.    On information and belief, Defendants, acting as the owner and operator of the interactive Insta360 website[34] and Insta360 Official Store[35] actively, over the Internet, solicit orders from, sells, and ships the Accused Products directly to consumers at addresses throughout the United States, including consumers in Texas and this judicial District. Defendants require their customers to enter into agreements with them as part of the direct sale, such as the such as Defendants' Sales Policy,[36] which lists the contracting party as "Arashi Vision Inc. and its global affiliated companies (collectively, 'Insta360')," and Defendants' Privacy Policy, which lists the

---

[34] *See* https://www.insta360.com/.

[35] *See* https://store.insta360.com/.

[36] *See* Ex. 3 (Insta360 Sales Policy).

contracting party as "Arashi Vision Inc. and its affiliates" and lists the point of contact as "Arashi Vision Inc., 25th Floor, Building 1, Jinlitong Financial Center, 1100 Xingye Road, Haiwang Community, Xin'an Street, Bao'an District, Shenzhen, Guangdong, China."[37]

25.    Additionally, through their website, Defendants actively conduct pre-sales and other marketing activity to consumers throughout the United States, including consumers in Texas and this judicial District, inducing them to enter into agreements (such as, for example, Defendants' Privacy Policy) with Defendants to receive marketing materials about the Accused Products.

26.    On information and belief, Defendants have and continue to market, offer for sale, and sell to customers in Texas and in this District through authorized national retailers online.

---

[37] *See* Ex. 1 (Insta360 Privacy Policy).



Figure 5: Insta360 "Where to Buy" Webpage[38]

27.    On information and belief, Defendants maintain supply and distribution agreements with United States brick-and-mortar retailers to act as authorized resellers, which customers Defendants advertise on their website, including Best Buy, Target, and Scheels, through which the

---

[38] *See* https://www.insta360.com/support/buy (composite image).

16

Accused Products are sold and offered for sale in this judicial District, including at least the following:[39]



Figure 6: Best Buy, 422 W Loop 281, Longview, Texas 75605



Figure 7: Best Buy, 5514 S Broadway Ave, Tyler, Texas 75703

---

[39] *See* https://www.insta360.com/support/buy-map.



Figure 8: Best Buy, 5299 Eldorado Pkwy, Frisco, Texas 75033



Figure 9: Target, 3201 Preston Rd, Frisco, TX 75034



Figure 10: Best Buy, 4210 Saint Michael Dr, Texarkana, TX 75503



Figure 11: Best Buy, 823 N Creek Dr, Sherman, Texas 75092



Figure 12: Best Buy, 1751 N Central Expy, McKinney, Texas 75070



Figure 13: Best Buy, 190 E Stacy Rd, Allen, Texas 75002



Figure 14: Target, 3440 W FM 544, Wylie, TX 75098



Figure 15: Scheels, 4450 Destination Drive, The Colony TX, 75056

28.     Through Defendants' purposeful conduct directed at this District, the Accused Products have been imported, offered for sale, and available for pickup as of June 9, 2026, at retailers in the Eastern District of Texas. For example, as of June 9, 2026, the Luna Ultra is in stock and available for order and pickup at the Best Buy located at 1751 N Central Expy, McKinney, Texas 75070.



Figure 16: Best Buy McKinney Order Page[40]

29.     On information and belief, Defendants have derived, and absent injunctive relief will continue to derive, substantial revenue from sales of Insta360 products in this District, including from sales and offers for sale of the Accused Products in the United States.

30.     In the alternative, this Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2). This is because: (a) the claims for patent infringement in this action arise under federal law; (b) Defendants are not subject to the jurisdiction of any state's

---

[40] *See* https://www.bestbuy.com/product/insta360-luna-ultra-standard-bundle-cosmic-black/J39VLT4KK4.

courts of general jurisdiction; and (c) exercising jurisdiction over Defendants is consistent with the United States Constitution.

31.     Venue is proper in this District as to Defendants pursuant to 28 U.S.C. § 1391(c)(3). Defendants are organized under the laws of foreign jurisdictions and are not residents of any judicial district of the United States. As such, Defendants may be sued in any judicial district, including this one.

## BACKGROUND

### A.     DJI's Innovation in Handheld Imaging and Camera Stabilization.

32.     DJI was founded in 2006 by a small team of engineers working out of a college dorm room.[41] Today, DJI is the global leader in camera stabilization and imaging products, with operations across the United States, Europe, and Asia and a worldwide reputation for innovation in flight control, gimbal stabilization, and integrated imaging systems. DJI has applied for and obtained thousands of U.S. patents covering every facet of camera stabilization, aerial imaging, and handheld imaging—from gimbal motors and inertial sensing to subject tracking, automated framing, mode switching, integrated wireless audio, and modular camera architectures.[42]

33.     From its earliest products, DJI's defining contribution has been three-axis stabilized imaging. DJI's Ronin and Inspire gimbal systems set the standard for cinema-grade camera stabilization, and DJI's Osmo line carried that technology into consumer hands with continued innovation. Through years of sustained investment in research and development, DJI has

---

[41] *See* "DJI Developers Share the Secret of Our Success," DJI Viewpoints Official Blog (Mar. 19, 2020) https://viewpoints.dji.com/blog/dji-developers-share-the-secret-of-our-success.

[42] SZ DJI Technology Co., Ltd. is currently the assignee of 2,277 U.S. Patents. *See* https://assignmentcenter.uspto.gov/search/patent/assigneeAssignorDetails%3FexactAssigneeNa me%3DSZ%20DJI%20TECHNOLOGY%20CO.,%20LTD.

progressively miniaturized, integrated, and intelligently automated the gimbal-and-camera combination, producing the body of intellectual property reflected in the Asserted Patents.

### B.    The DJI Osmo Pocket Defines a New Product Category.

34.    DJI introduced the original Osmo Pocket in November 2018: the first truly pocketable, integrated handheld gimbal camera of its kind.[43] Before the Osmo Pocket, the term "handheld gimbal" generally referred to a motorized cradle into which a user mounted a separate smartphone or action camera. DJI's Osmo Pocket integrated the camera, the three-axis gimbal, the processing electronics, the user controls, and the display into a single device small enough to fit in a shirt pocket.[44]

35.    The Osmo Pocket and its successors—including the Osmo Pocket 2 and Osmo Pocket 3—introduced and refined the suite of innovations that today define the modern handheld gimbal camera, including: (i) compact three-axis gimbal stabilization with high-resolution attitude sensing and intelligent follow control; (ii) automated subject tracking and framing; (iii) seamless transitions between landscape and portrait shooting orientations; (iv) integrated wireless audio capture paired with dedicated microphones; (v) detachable and modular grip and accessory architectures; and (vi) dual-lens optical systems with user-directed point-selection between focal lengths. Each of these innovations is the subject of one or more of DJI's United States patents, including those asserted in this action.

---

[43] *See* "DJI announces the Osmo Pocket, 'the world's smallest 3-axis gimbal' that shoots 4K60p video," Digital Photography Review (Nov. 28, 2018) https://www.dpreview.com/news/5924313633/dji-announces-the-osmo-pocket-the-world-s-smallest-three-axis-gimbal-that-shoots-4k60p-video; *see also*" Small Wonder: An Interview with the Osmo Pocket Design Team," ViewPoints DJI Official DJI Blog (Jun. 11, 2020) https://viewpoints.dji.com/blog/small-wonder-an-interview-with-the-osmo-pocket-design-team.

[44] *See* https://www.dji.com/osmo-pocket.

36.    The Osmo Pocket line has become the defining product in the handheld gimbal camera category. It has been embraced by reviewers, professional content creators, and consumers worldwide, and has set the technical and design benchmark against which competing products are measured.[45]

### C.    Defendants and the Accused Products.

37.    Defendant Arashi Vision Inc., doing business as Insta360, was founded in 2015 in Shenzhen, China, by its current chief executive officer, Jingkang Liu.[46] For most of its history, Insta360's product line consisted of 360-degree consumer cameras and small action cameras—

---

[45] The Osmo Pocket line of products has received numerous industry awards and recognitions including: (1) https://www.t3.com/tech/gopro-action-cameras/dji-osmo-pocket-4-review (Osmo Pocket 4, T3 Platinum Award); (2) https://www.techradar.com/news/best-vlogging-camera (Osmo Pocket 4, TechRadar top overall pick for best vlogging camera); (3) https://www.techradar.com/best/best-cheap-video-camera (Osmo Pocket 4, TechRadar selection for best stabilized cheap video camera); (4) https://www.tipa.com/news/tipa-and-the-cjpc-grand-prix-awards/ (Osmo Pocket 3, Camera GP2024 Editor's Choice R&D Award); (5) https://www.digitalcameraworld.com/cameras/digital-cameras/just-how-trendy-is-vintage-retro-cameras-outnumber-fancy-flagships-on-this-list-of-award-winning-cameras (Osmo Pocket 3, iF Design Award 2025 recognition, as reported by Digital Camera World); (6) https://www.digitalcameraworld.com/reviews/dji-osmo-pocket-3-review (Osmo Pocket 3, favorable Digital Camera World review verdict); (7) https://www.techradar.com/news/best-4k-camera (Osmo Pocket 3, TechRadar top pick for stabilized pocket-sized 4K recording); (8) https://lucies.org/wp-content/uploads/2025/03/LTA-Past-Winners-2021.pdf (DJI Pocket 2, Lucie Technical Award for Best Compact Camera); (9) https://ifdesign.com/en/winner-ranking/project/dji-pocket2/309108 (DJI Pocket 2, iF Design Award); (10) https://www.red-dot.org/project/dji-pocket-2-51386 (DJI Pocket 2, Red Dot Design Award); (11) https://www.popsci.com/story/technology/best-of-whats-new-2019/ (Osmo Pocket, Popular Science Best of What's New 2019 recognition); (12) https://www.g-mark.org/en/gallery/winners/9e28dabe-803d-11ed-af7e-0242ac130002?companies=e5cb3f3a-7f40-485e-9b56-77195fc11fe3 (Osmo Pocket, Good Design Award); (13) https://www.trustedreviews.com/news/trusted-reviews-awards-2019-need-know-3931890? (Osmo Pocket, Trusted Reviews Awards 2019 Best Pocket Gimbal); (14) https://www.wsj.com/articles/shots-of-adrenaline-the-best-action-cameras-for-outdoor-adventurers-1154947o018 (Osmo Pocket, Wall Street Journal editorial recommendation for action cameras).

[46] *See* https://www.insta360.com/about.

product categories distinct from DJI's pocketable handheld gimbal cameras. Insta360 completed its initial public offering in June 2025.[47]

40. Until 2026, Insta360 had not introduced a product in the integrated, pocketable handheld gimbal camera category pioneered by DJI's Osmo Pocket. That changed on April 19, 2026, when Insta360 publicly debuted the Insta360 Luna line at the 2026 NAB Show in Las Vegas, Nevada, a United States-based trade show attended by industry press and content creators.[48]

39. The Luna line comprises at least two products: the Insta360 Luna Pro and the Insta360 Luna Ultra. According to Insta360's own promotional materials, product teasers, and demonstrations at the 2026 NAB Show, the Accused Products are handheld gimbal cameras with integrated optics—the same product architecture pioneered by the DJI Osmo Pocket—and Insta360 markets them expressly as competitors to DJI's Osmo Pocket line.

40. The Luna Pro is a single-lens handheld gimbal camera co-engineered with Leica. According to Insta360, the Luna Pro features an integrated three-axis gimbal stabilization with intelligent follow and subject-tracking modes, and wireless audio recording via Insta360's Mic Pro accessory.[49] The Luna Ultra incorporates the Luna Pro feature set and adds a second optical module

---

[47] *See* "Insta360 Goes Public in China, 33-Year-Old Founder Now a Billionaire," PetaPixel (Jun. 11, 2025) https://petapixel.com/2025/06/11/insta360-goes-public-in-china-33-year-old-founder-now-a-billionaire/.

[48] *See* "Insta360 Previews New Luna Series and Major Updates at NAB Show 2026," PR Newswire (Apr. 19, 2026) https://www.prnewswire.com/news-releases/insta360-previews-new-luna-series-and-major-updates-at-nab-show-2026-302746651.html.

[49] *See* "I tried the Insta360 Luna vlogging camera — and it's going to give the DJI Pocket 4 some serious competition," Techradar (May 22, 2026) https://www.techradar.com/cameras/video-cameras/i-tried-the-insta360-luna-vlogging-camera-and-its-going-to-give-the-dji-pocket-4-some-serious-competition.

that permits user-directed point-selection between focal lengths, together with a modular, detachable hand-grip architecture.[50]

41. The features Insta360 promotes as differentiating the Accused Products—its distinctive handheld form featuring a display and a gimbal-mounted camera head elevated above the handle on an articulated neck—are the very innovations that DJI invented, refined, and patented in connection with its Osmo Pocket line. As set forth in the Counts below, the Accused Products embody, either literally or under the doctrine of equivalents, one or more claims of each of the Asserted Patents.

42. Defendants market the Accused Products to United States consumers through, among other channels, Insta360's United States-facing website (www.insta360.com),[51] Insta360's United States-facing social-media accounts, a network of authorized United States retailers and resellers, in-store brick and mortar branded kiosks, and direct-to-consumer sales channels. The Accused Products were publicly demonstrated in the United States at the 2026 NAB Show and, on information and belief, are available for order and shipment to United States customers and customers in this judicial District on June 9, 2026.

**D. Defendants' Knowledge of DJI's Patents.**

43. On information and belief, Defendants have closely monitored DJI's products and patent portfolio for years. Insta360's own chief executive officer has publicly acknowledged that Insta360 maintains and regularly updates detailed analyses comparing DJI's commercial products against the Insta360 and DJI patent portfolios, and that Insta360 specifically evaluates whether DJI's products fall within the scope of Insta360's own patent claims. Through these activities, and

---

[50] *See id.*

[51] *See* https://www.insta360.com/.

through Insta360's development of the Accused Products as a direct competitive response to the Osmo Pocket line, Defendants have had actual or constructive knowledge of DJI's United States patent portfolio, including the Asserted Patents.

44.    Moreover, Defendants have had actual knowledge of each of the Asserted Patents and of their infringement, or were willfully blind thereto, no later than May 26, 2026. On that date, DJI sent a letter to Defendants informing them of each of the Asserted Patents.

45.    At a minimum, Defendants have had actual knowledge of each of the Asserted Patents and of their infringement thereof no later than the filing and service of this Complaint. Defendants' continued importation, manufacture, use, sale, and offer for sale of the Accused Products, and associated acts to induce or contribute to infringement of the Accused Patents by users of the Accused Products, with knowledge of the Asserted Patents, constitutes willful infringement warranting enhanced damages under 35 U.S.C. § 284.

## THE ASSERTED PATENTS

46.    DJI invented the modern pocket gimbal camera product category and obtained numerous United States patents covering the features that make the product what it is. These patents include, but are not limited to, U.S. Patent Nos. D1,110,390 (the "D'390 Patent") and D1,072,023 (the "D'023 Patent") (collectively, the "Asserted Patents").

### A.    The D'390 Patent

47.    The D'390 Patent is entitled "Stabilized Camera Device" and issued on January 27, 2026. A true and correct copy of the D'390 Patent is attached as Exhibit 4.

48.    The D'390 Patent was filed on April 10, 2025, as U.S. Patent Application No. 29/997,945, which is a continuation of U.S. Patent Application No. 29/878,880 filed June 28, 2023, issued as U.S. Patent No. D1,072,023.

49.    The D'390 Patent claims an ornamental design for a stabilized camera device, as shown below:



**B.    The D'023 Patent**

50.    The D'023 Patent is entitled "Stabilized Camera Device" and issued on April 22, 2025. A true and correct copy of the D'023 Patent is attached as Exhibit 5.

51.    The D'023 Patent was filed on June 28, 2023 as U.S. Patent Application No. 29/878,880.

52.    The D'023 Patent claims an ornamental design for a stabilized camera device, as shown below.

27



## COUNT I: INFRINGEMENT OF THE D'390 PATENT

53.    DJI incorporates the allegations of all foregoing paragraphs as if fully restated herein.

54.    DJI owns by assignment all rights, title, and interest in and to the D'390 Patent, with the full and exclusive right to bring suit to enforce the D'390 Patent, including the right to recover for past infringement.

55.    The D'390 Patent is valid and enforceable under the patent laws of the United States.

56.    Defendants have been and are now directly infringing and/or indirectly infringing the D'390 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271 *et seq.*, by making, using, offering for sale, or selling in the United States, and/or importing into the United States the Accused Products without authority or license.

57.    On information and belief, Defendants' Accused Products embody the ornamental design claimed in the D'390 Patent, which includes the device's neck that connects the body to the gimbal arm connection point and the outwardly projecting rotatable screen. The Accused Products

incorporate each of these solid-line design elements and present the same overall visual impression as the ornamental design claimed in the D'390 Patent.

58.     As non-limiting examples, Exhibit 6 is an exemplary claim chart matching Figures 1-8 of the D'390 Patent against the Accused Products. The contentions in Exhibit 6 are based on publicly available information. DJI reserves the right to modify or supplement these contentions based upon information learned through discovery.

59.     The overall appearance of the ornamental design claimed in the D'390 Patent and the corresponding design of the Accused Products are substantially the same. An ordinary observer familiar with the prior art in the stabilized camera device marketplace would perceive the overall appearance of the ornamental design of the D'390 Patent and the corresponding design of the Accused Products to be substantially the same. Such an ordinary observer would be deceived into believing the design of the Accused Products was the same as the ornamental design claimed in the D'390 Patent.

60.     Defendants have been, and currently are, liable for direct infringement of the D'390 Patent because Defendants, their agents, and those acting in concert with Defendants import, use, sell, and offer for sale the Accused Products in the United States.

61.     Defendants' infringement of the D'390 Patent has been and continues to be willful. At least since May 26, 2026, Defendants have deliberately continued to infringe the D'390 Patent despite knowing of its existence. Alternatively, at least since the filing date of this suit, Defendants have deliberately continued to infringe the D'390 Patent despite knowing of the patent's existence and how the Accused Products infringe. Further, Defendants have deliberately continued to encourage others' infringement of the D'390 Patent, including by continuing to disseminate their marketing and technical materials to customers.

62.     Defendants have also been, and currently are, liable for inducement of infringement by others of the D'390 Patent under 35 U.S.C. § 271(b). Defendants have provided the Accused Products to others, including intermediaries, distributors, customers, and end users, in an infringing manner while being on notice of or willfully blind to the D'390 Patent and the infringing nature of the Accused Products. On information and belief, Defendants knew or should have known of the D'390 Patent and the alleged infringement, or deliberately took steps to avoid learning those facts. Nevertheless, Defendants knowingly and intentionally instructed, encouraged, and aided others, including its customers and end users, to directly infringe the D'390 Patent including by providing the Accused Products, instruction manuals, and other product support to enable and facilitate infringement with the specific intent that its actions would result in infringement of the D'390 Patent.

63.     Defendants have been, and currently are, liable for contributory infringement of the D'390 Patent under 35 U.S.C. § 271(c). Defendants have provided the Accused Products, and/or hardware and software components thereof, which embody a material part of the claimed invention of the D'390 Patent, are known by Defendants to be specially made or adapted for use in an infringing manner, and are not staple articles with substantial non-infringing uses. The Accused Products, and their supporting hardware and software components are specially designed to infringe the D'390 Patent, and such supporting components have no substantial non-infringing uses. Defendants contribute to infringement of the D'390 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Products and/or other components to third parties.

64.     Defendants' infringement of the D'390 Patent is exceptional and entitles DJI to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

65.     DJI has been damaged by Defendants' infringement of the D'390 Patent and will continue to be damaged unless Defendants are enjoined by this Court.

66.     DJI has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors DJI, and public interest is not disserved by an injunction.

67.     DJI is entitled to recover from Defendants all damages that DJI has sustained as a result of Defendants' infringement of the D'390 Patent, including without limitation lost profits and not less than a reasonable royalty.

## COUNT II: INFRINGEMENT OF THE D'023 PATENT

68.     DJI incorporates the allegations of all foregoing paragraphs as if fully restated herein.

69.     DJI owns by assignment all rights, title, and interest in and to the D'023 Patent, with the full and exclusive right to bring suit to enforce the D'023 Patent, including the right to recover for past infringement.

70.     The D'023 Patent is valid and enforceable under the patent laws of the United States.

71.     Defendants have been and are now directly infringing and/or indirectly infringing the D'023 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271 *et seq.*, by making, using, offering for sale, or selling in the United States, and/or importing into the United States the Accused Products without authority or license.

72.     On information and belief, Defendants' Accused Products embody the ornamental design claimed in the D'023 Patent, which includes without limitation the elongated handheld body, neck connecting the body to the gimbal arm connection point, gimbal assembly and camera

module at the top, rotatable display and bezel, lower control section housing the scroll wheel and record button, side-mounted accessory slot, and the port opening at the base. The Accused Products incorporate each of the solid-line design elements and present the same overall visual impression as the ornamental design claimed in the D'023 Patent.

73.     As non-limiting examples, Exhibit 7 is an exemplary claim chart matching Figures 1-8 of the D'023 Patent against the Accused Products. The contentions in Exhibit 7 are based on publicly available information. DJI reserves the right to modify or supplement these contentions based upon information learned through discovery.

74.     The overall appearance of the ornamental design claimed in the D'023 Patent and the corresponding design of the Accused Products are substantially the same. An ordinary observer familiar with the prior art in the stabilized camera device marketplace would perceive the overall appearance of the ornamental design of the D'023 Patent and the corresponding design of the Accused Products to be substantially the same. Such an ordinary observer would be deceived into believing the design of the Accused Products was the same as the ornamental design claimed in the D'023 Patent.

75.     Defendants have been, and currently are, liable for direct infringement of the D'023 Patent because Defendants, their agents, and those acting in concert with Defendants import, use, sell, and offer for sale the Accused Products in the United States.

76.     Defendants' infringement of the D'023 Patent has been and continues to be willful. At least since May 26, 2026, Defendants have deliberately continued to infringe the D'023 Patent despite knowing of its existence. Alternatively, at least since the filing date of this suit, Defendants have deliberately continued to infringe the D'023 Patent despite knowing of the patent's existence and how the Accused Products infringe. Further, Defendants have deliberately continued to

encourage others' infringement of the D'023 Patent, including by continuing to disseminate their marketing and technical materials to customers.

77.    Defendants have also been, and currently are, liable for inducement of infringement by others of the D'023 Patent under 35 U.S.C. § 271(b). Defendants have provided the Accused Products to others, including intermediaries, distributors, customers, and end users, in an infringing manner while being on notice of or willfully blind to the D'023 Patent and the infringing nature of the Accused Products. On information and belief, Defendants knew or should have known of the D'023 Patent and the alleged infringement, or deliberately took steps to avoid learning those facts. Nevertheless, Defendants knowingly and intentionally instructed, encouraged, and aided others, including its customers and end users, to directly infringe the D'023 Patent including by providing the Accused Products, instruction manuals, and other product support to enable and facilitate infringement with the specific intent that its actions would result in infringement of the D'023 Patent.

78.    Defendants have been, and currently are, liable for contributory infringement of the D'023 Patent under 35 U.S.C. § 271(c). Defendants have provided the Accused Products, and/or hardware and software components thereof, which embody a material part of the claimed invention of the D'023 Patent, are known by Defendants to be specially made or adapted for use in an infringing manner, and are not staple articles with substantial non-infringing uses. The Accused Products, and their supporting hardware and software components are specially designed to infringe the D'023 Patent, and such supporting components have no substantial non-infringing uses. Defendants contribute to infringement of the D'023 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Products and/or other components to third parties.

79. Defendants' infringement of the D'023 Patent is exceptional and entitles DJI to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

80. DJI has been damaged by Defendants' infringement of the D'023 Patent and will continue to be damaged unless Defendants are enjoined by this Court.

81. DJI has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors DJI, and public interest is not disserved by an injunction.

82. DJI is entitled to recover from Defendants all damages that DJI has sustained as a result of Defendants' infringement of the D'023 Patent, including without limitation lost profits and not less than a reasonable royalty.

## JURY DEMAND

83. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks this Court for an order granting the following relief:

a. A judgment in favor of Plaintiff that Defendants have infringed, directly or indirectly, either literally and/or under the doctrine of equivalents, the D'390 and D'023 Patents;

b. A judgment and order finding that Defendants' infringement has been willful;

c. A permanent injunction prohibiting Defendants and all their affiliates, agents, employees, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them, from further acts of infringement;

34

d.      A judgment and order requiring Defendants to pay Plaintiff its damages, costs, expenses, and any enhanced damages to which Plaintiff is entitled for Defendants' infringement;

e.      An award of Defendants' profits for the Accused Products under 35 U.S.C. § 289, including any enhanced damages to which Plaintiff is entitled for Defendants' infringement;

f.      A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

g.      A judgment and order finding this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorneys' fees against Defendants; and

h.      Any and all other relief as the Court may deem appropriate and just under the circumstances.

Dated: June 10, 2026                          Respectfully submitted,

                                    **FISH & RICHARDSON P.C.**

By:  */s/ David B. Conrad*
      Neil J. McNabnay
      Texas Bar No. 24002583
      mcnabnay@fr.com
      David B. Conrad
      Texas Bar No. 24049042
      conrad@fr.com
      Noel Chakkalakal
      Texas Bar No. 24053676
      chakkalakal@fr.com
      Michael R. Ellis
      Texas Bar No. 24102726
      ellis@fr.com
      1717 Main Street, Suite 5000
      Dallas, Texas 75201
      (214) 747-5070 – Telephone
      (214) 747-2091 – Facsimile

      *Attorneys for Plaintiff*
      *SZ DJI Technology Co., Ltd.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 10, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                   */s/ David B. Conrad*
                                    David B. Conrad